# EXHIBIT 5



777 E WISCONSIN AVE
MILWAUKEE, WI 53202-5306
414.271.2400 TEL
414.297.4900 FAX
**FOLEY.COM**

WRITER'S DIRECT LINE
414.297.5518
awronski@foley.com

May 30, 2025

<u>Via Email</u>

Charles J. Nerko
Barclay Damon
1270 Avenue of the Americas, Ste. 501
New York, NY  10020
cnerko@barclaydamon.com

  RE: **Cencap Federal Credit Union**

Dear Mr. Nerko:

  This firm represents Fiserv Solutions, LLC (f/k/a Fiserv Solutions, Inc.) ("Fiserv") and its affiliates, including Fiserv, Inc., with respect to the relationship between Fiserv and Cencap Federal Credit Union ("Cencap").  We are in receipt of your May 28 correspondence to Mr. Rosman related to the Master Agreement between Cencap and Fiserv.  Please direct all future correspondence about this matter to me and my colleague, Jesse Byam-Katzman.

  Your letter threatens that Cencap will pursue a temporary restraining order and preliminary injunction within two days of the date of the letter, and without further notice, should Fiserv not comply with a litany of demands, including: (i) remediating alleged (but unidentified) security problems, (ii) cooperating with Cencap in investigating (likewise unidentified) "security breaches," (iii) assisting Cencap in transitioning to a successor vendor, (iv) providing Cencap with various audits or evaluations associated with Fiserv's data-security measures, and (v) compensating Cencap for unspecified damages and attorneys' fees.  Cencap and its counsel are on notice that Fiserv has engaged Foley & Lardner LLP and Carmody Torrance Sandak & Hennessey LLP to represent it in this matter.  As a result, Cencap has no basis for seeking emergency injunctive relief on an *ex parte* basis.  Among other things, Cencap cannot "clearly show that immediate and irreparable injury, loss, or damage will result" to Cencap before Fiserv can be heard in opposition to any threatened motion.  *See* Fed. R. Civ. P. 65(b)(1)(a).  Nor could Cencap's counsel certify in good faith any reason that notice should not be required.  *See* Fed. R. Civ. P. 65(b)(1)(B).  Fiserv expects that Cencap will provide Fiserv, through its undersigned counsel, with prompt actual notice of any motion for injunctive relief, consistent with Cencap's (and its counsels') obligations under the Federal Rules of Civil Procedure.

  Putting that procedural issue aside, there is no substantive basis for injunctive or other relief either.  Fiserv has not breached any obligations under the Master Agreement and, other than cursory assertions, your letter details none.  Cencap has been using Fiserv's services for nearly a decade and has not provided Fiserv with any notice, inquiry, or communication of any supposed data security incident in connection with the services that Fiserv has provided.  Fiserv denies the existence of any such security issues, data breach, or incident.  Your May 28 letter, which was received on May 29, and demanded a response by May 30, was the first communication Fiserv has received from Cencap purporting to raise any such issues.  Indeed, Fiserv's relationship manager spoke with representatives of Cencap yesterday morning and none



Charles J. Nerko
May 30, 2025
Page 2

of the issues alleged in your correspondence were once mentioned during that conversation. Put simply, if disputes exist between the parties, Fiserv is unaware of them and Cencap has not identified any, much less disputes that would warrant the extraordinary emergency relief threatened in your letter. To the contrary, Cencap's conduct demonstrates there are none.

The balance of your letter also requires mention, because it makes numerous inaccurate statements and assertions.[1] For starters, there is no factual or legal basis for Cencap's assertion that Fiserv breached Section 3(b) of the Master Agreement. As noted above, Cencap has never notified Fiserv of any issue, breach, or incident—relating to Virtual Branch, Client360 or any other service provided under the Master Agreement—and your letter identifies none. To be clear, Fiserv is not aware of any, much less any imminent, issues with Cencap's use of Fiserv's services, and Fiserv denies that its services, including Virtual Branch Services and Client360, lack the required security controls. If Cencap has additional information to support its assertions, please provide it.

For these same reasons, Cencap's assertions that Fiserv breached other obligations related to the Master Agreement lack merit. In entirely cursory fashion, Cencap accuses Fiserv of: (i) failing to implement appropriate security measures under Section 4(a) of the Master Agreement; (ii) failing to comply with its regulatory, warranty, and privacy obligations under Section 6 of the Master Agreement; (iii) failing to comply with the services warranties under Section 3(e); (iv) violating the Virtual Branch Services Schedule to the ASP Services Exhibit; (v) failing to comply with Section 6 of the Privacy Notice; and (vi) failing to provide adequate security to Cencap under the implied covenant of good faith and fair dealing. Again, Cencap has never provided any notice of or expressed concern about, and Fiserv is not aware of, any security incidents or breaches related to the products and services that Cencap receives under the Master Agreement. Moreover, your letter does not describe any particular injury or incident that gives rise to any alleged concern that Fiserv can assess or evaluate further.

Finally, Cencap provides no justification for challenging the Master Agreement's automatic renewal provision. Cencap has entered into various amendments governing the services it receives from Fiserv, most recently including an amendment dated March 2024, for a term of five years. The notion that Cencap has been somehow pushed into renewal against its will is belied by the parties' contracting history. Further, New York's automatic-renewal statute, N.Y. Gen. Obl. Law § 5-903, has no application to the Master Agreement. The statute only restricts automatic renewal of contracts involving "service or repair *to or for any real or personal property*." *Id.* § 5-903(2) (emphasis added). Section 5-903 does not extend to administrative services and commercial contracts like the Master Agreement. *See, e.g.*, *Trustpilot Damages LLC v. Trustpilot Inc.*, 2022 WL 2124865, at *3 (2d Cir. June 13, 2022) (holding that Section 5-903 did not apply to consumer review data service contract); *Donald Rubin, Inc. v. Schwartz*, 160 A.D.2d 53, 57 (1st Dep't 1990) (holding that Section 5-903 did not apply to a consulting services contract); *Trepp, LLC v. McCord Dev., Inc.*, 100 A.D.3d 510 (1st Dep't 2012) (holding that Section 5-903 did not apply to an online financial analytics contract). If Cencap desires to terminate the Master Agreement before its expiration, Fiserv is entitled to payment of early termination fees under the

---

[1] Fiserv acknowledges receipt of Cencap FCU's preservation demand and expressly reserves all rights as to the appropriate and reasonable scope of its preservation obligations.



Charles J. Nerko
May 30, 2025
Page 3

Master Agreement.  Any dispute relating to termination fees presents a simple contract claim for money damages for which injunctive relief is inappropriate.

Cencap's demands that Fiserv provide data and information to Cencap's successor vendor suggests that the true purpose behind your letter is to terminate the services Cencap receives under the Master Agreement, ostensibly without payment required under the Master Agreement.  We strongly encourage Cencap to be candid about its intentions, so that the parties can work cooperatively and productively to effectuate their goals rather than incur unnecessary legal expenses. Fiserv is willing to discuss and facilitate an orderly transition to Cencap's new vendor on agreeable timelines and pursuant to the terms of the Master Agreement.

If Cencap truly wants to "amicably resolve[]" this matter, a discussion between business personnel would be a more appropriate and productive approach than the legal threats set forth in your letter, and we remind Cencap of the mandatory dispute resolution procedures in Section 9 of the Master Agreement.  To that end, Fiserv hereby designates Doug Donofrio, SVP Head of Credit Union Solutions as its representative to participate in the mandatory dispute resolution process pursuant to Section 9 of the Master Agreement.

We trust that these assurances resolve the concerns expressed in your letter and make clear that preliminary injunctive relief would be unnecessary, unwarranted, and inappropriate.

Fiserv hereby expressly reserves all rights and remedies afforded to it under the Master Agreement.

Very truly yours,

***/s/ Andrew J. Wronski***

Andrew J. Wronski

cc:     Stephen J. Conover, Carmody Torrance Sandak & Hennessey LLP
        David E. Frank, Fiserv Vice President, Associate General Counsel