UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CENCAP FEDERAL CREDIT UNION,
on behalf of itself and its members,

*Plaintiff,*

-against-

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC. and
FISERV, INC.,

*Defendants.*

Case No.: 3:25-CV-00913-VOD

## MEMORANDUM OF LAW IN SUPPORT OF CENCAP FEDERAL CREDIT UNION'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

Charles J. Nerko*
Brian D. Rich
Matthew J. Smith*
Xun Chen*
BARCLAY DAMON LLP
1270 Avenue of the Americas, Suite 501
New York, NY 10020
212.784.5800
cnerko@barclaydamon.com
brich@barclaydamon.com
msmith@barclaydamon.com
xchen@barclaydamon.com

*Attorneys for Plaintiff
Cencap Federal Credit Union,
on behalf of itself and its members*

* Not admitted in D. Conn; *pro hac vice* application to be filed

ORAL ARGUMENT REQUESTED

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... 2

EXECUTIVE SUMMARY ...................................................................................................... 1

BACKGROUND ...................................................................................................................... 4

ARGUMENT ............................................................................................................................ 8

   I.     FISERV'S PRIOR FALSE STATEMENTS TO A FEDERAL COURT SHOW
        UNCLEAN HANDS AND WARRANT EQUITABLE RELIEF. ................................. 9

  II.    CENCAP FEDERAL WILL BE IRREPARABLY HARMED WITHOUT
        INJUNCTIVE RELIEF ............................................................................................ 12

      A.  Fiserv admits irreparable harm. ............................................................... 13

      B.  Cencap Federal's extraordinarily sensitive confidential information is being
          irreparably jeopardized. ............................................................................ 13

 III.   CENCAP FEDERAL IS LIKELY TO PREVAIL ON THE MERITS ........................ 18

 IV.  ALTERNATIVELY, CENCAP FEDERAL HAS RAISED SUFFICIENTLY
        SERIOUS QUESTIONS GOING TO THE MERITS, AND THE BALANCE OF THE
        HARDSHIPS DECIDEDLY TIPS IN CENCAP FEDERAL'S FAVOR ................... 24

  V.    THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ........... 25

 VI.  CENCAP FEDERAL SHOULD NOT BE REQUIRED TO POST A BOND.............. 25

 VII.  THE COURT SHOULD AUTHORIZE LIMITED, EXPEDITED DISCOVERY ....... 26

CONCLUSION ....................................................................................................................... 29

31354402

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*,
    472 F. Supp. 3d 142 (W.D. Penn. 2020)..............................................................22

*Bessemer System Federal Credit Union v. Fiserv Solutions, LLC et al.*,
    No. 2:19-cv-00624-RJC (W.D. Pa. 2019)...................................................7, 9, 10

*Bionpharma Inc. v. CoreRx, Inc.*,
    582 F. Supp. 3d 167 (S.D.N.Y. 2022)................................................................18

*Centerplan Constr. Co. LLC v. City of Hartford*,
    No. X07-HHD-CV-16-6069748-S, 2024 Conn. Super. LEXIS 2525 (Super.
    Ct. Nov. 26, 2024)...............................................................................................23

*Colgan Fin. Grp., Inc. v. First 100, LLC*,
    No. 3:14-CV-01254 (VLB), 2014 U.S. Dist. LEXIS 200197 (D. Conn. Dec.
    22, 2014)..............................................................................................................26

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*,
    96 F.4th 351 (2d Cir. 2024)...................................................................................8

*Emerick v. Kuhn*,
    52 Conn. App. 724, 737 A.2d 456, *cert. denied*, 249 Conn. 929, 738 A.2d 653,
    *cert. denied sub nom. Emerick v. United Technologies Corp.*, 528 U.S. 1005,
    145 L. Ed. 2d 386, 120 S. Ct. 500 (1999)...........................................................22

*Entegee, Inc. v. Korwek*,
    No. 3:15-cv-1087 (VLB), 2015 U.S. Dist. LEXIS 118263 (D. Conn. Sep. 4,
    2015)......................................................................................................................8

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009).................................................................................15

*Genworth Fin. Wealth Mgmt. v. McMullan*,
    721 F. Supp. 2d 122 (D. Conn. 2010).................................................................15

*Health LLC v. Jacobson*,
    No. 21-cv-004170-VAB, 2021 U.S. Dist. LEXIS 67668 (D. Conn. Apr. 1,
    2021)....................................................................................................................27

*Henry v. Oluwole*,
    108 F.4th 45 (2d Cir. 2024).................................................................................22

2

*Kent Literary Club v. Wesleyan Univ.*,
  338 Conn. 189, 257 A.3d 874 (2021) ...................................................................20

*Local Moms Network, LLC v. Lamont*,
  No. 3:24-cv-192 (SRU), 2024 U.S. Dist. LEXIS 31134 (D. Conn. Feb. 23,
  2024) .................................................................................................................8

*Mastrio v. Sebelius*,
  768 F.3d 116 (2d Cir. 2014)...............................................................................8

*McKinney v. Dougherty*,
  No. 3:24-cv-1024 (VAB), 2025 U.S. Dist. LEXIS 36190 (D. Conn. Feb. 28,
  2025) .................................................................................................................25

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
  312 F.3d 94 (2d Cir. 2002)..................................................................................8

*Mohammed v. Reno*,
  309 F.3d 95 (2d Cir. 2002)..................................................................................18

*N. Atl. Instruments, Inc. v. Haber*,
  188 F.3d 38 (2d Cir. 1999)..................................................................................13

*Nokia Corp. v. Interdigital, Inc.*,
  645 F.3d 553, 557 (2d Cir. 2011).........................................................................25

*Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*,
  340 Conn. 200, 263 A.3d 796 (2021) ...................................................................23

*Rodriguez v. Noem*,
  No. 3:25-cv-616 (SRU), 2025 U.S. Dist. LEXIS 83349 (D. Conn. May 1,
  2025) .................................................................................................................8

*Sica v. Connecticut*,
  331 F. Supp. 2d 82 (D. Conn. 2004) ....................................................................27

*Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*,
  468 F. App'x 43 (2d Cir. 2012) ...........................................................................13

*Teachers Ins. & Annuity Ass'n of Am. v. Wheatley*,
  Civil Action No. 3:21 - CV - 1380 (CSH), 2021 U.S. Dist. LEXIS 211296 (D.
  Conn. Nov. 2, 2021)........................................................................................26, 27

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
  60 F.3d 27, 37 (2d Cir. 1995).............................................................................17

*Ulbrich v. Groth*,
  310 Conn. 375, 78 A.3d 76 (2013) ......................................................................23

31354402

*United States v. Cedeño*,
     644 F.3d 79 (2d Cir. 2011)......................................................................................12

*Whipper v. Green*,
     No. 3:23-CV-27 (SVN), 2024 U.S. Dist. LEXIS 144066 (D. Conn. Aug. 13,
     2024) ...............................................................................................................8, 18

**Statutes**

18 U.S.C. § 1839(3) .....................................................................................................21

18 U.S.C. § 1839(5) .....................................................................................................21

Conn. Gen. Stat. § 35-51 .............................................................................................21

Conn. Gen. Stat. § 36a-701b ........................................................................................17

Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 *et seq.*...............21

**Other Authorities**

12 C.F.R. Part 748, App'x A at III (D) .....................................................................8, 16

Fed. R. Civ. P. 30(b)(6)...............................................................................................27

Fed. R. Civ. P. 65 ...........................................................................................................2

Fed. R. Civ. P. 65(c) ....................................................................................................25

13 MOORE'S FEDERAL PRACTICE - CIVIL § 65.06[5][a] ..............................................11

Nat'l Credit Union Administration, "Third-Party Vendor Authority" .........................13

## <u>EXECUTIVE SUMMARY</u>

Cencap Federal Credit Union brings this motion to protect its confidential information by preventing further exposure of its sensitive financial data due to Fiserv's failure to implement a basic, promised security safeguard.

- Fiserv stores and controls Cencap Federal's online banking system, as well as provides its customers with a support-ticketing platform. Despite the sensitivity of this data, Fiserv has failed to enable multi-factor authentication—a foundational security control in the financial sector.

- Fiserv's own contract obligates it to implement multi-factor authentication. Cencap Federal not only paid the required activation fee but also continues to pay annual fees for the feature. Yet, Fiserv has refused to activate it.

- After Cencap Federal discovered the lapse and raised the alarm, Fiserv dismissed the concern and declined to take corrective action—leaving critical systems exposed.

- Without prompt relief, Cencap Federal—and more than 9,000 of its members—face imminent and irreparable harm from a potential data breach.

Cencap Federal therefore seeks a very narrowly tailored temporary restraining order and preliminary injunction directing Fiserv to activate multi-factor authentication as contractually agreed. This relief is essential to mitigate the ongoing cybersecurity threat and protect member data from unauthorized access.

Cencap Federal also seeks expedited discovery. Fiserv's lack of candor in prior injunction proceedings concerning its security practices warrants careful scrutiny of any factual assertions it may now advance. Expedited discovery will help the Court develop an informed record on which to rule on the forthcoming motion for preliminary injunction. This request is neither novel nor burdensome. The parties' existing agreement already grants Cencap Federal robust audit rights, which Fiserv has ignored. Having previously committed to provide such records in the ordinary course of business, Fiserv should not object to producing them now in the course of expedited discovery.

1

Plaintiff Cencap Federal Credit Union ("Cencap Federal") requests that the Court issue a temporary restraining order and preliminary injunction under FRCP 65 against Fiserv Solutions, LLC a/k/a Fiserv Solutions, Inc. ("Fiserv Solutions") and Fiserv, Inc. (collectively, "Fiserv") and permit expedited discovery.

In or around 2016, Cencap Federal engaged Fiserv to provide online banking services for Cencap Federal. Declaration of Al Festini, dated June 6, 2025 ("Festini Decl."), ¶ 12. For Fiserv to perform the service, Cencap Federal provided highly sensitive and confidential banking information to Fiserv. *Id.* ¶ 13. Fiserv promised to provide the same level of care and discretion while protecting Cencap Federal's data as it uses to protect its own sensitive information. *See id.* ¶ 14. Fiserv further promised to protect Cencap Federal's data with reasonable care, and in full compliance with applicable laws and regulations. *Id.* As part of this, Fiserv explicitly agreed to implement an important security control called multi-factor authentication. *Id.* ¶ 16. This lawsuit is the result of Fiserv's failure to live up to those promises—Fiserv failed to perform its contractual duties, and it failed to use reasonable care in protecting Cencap Federal's data and omitted multi-factor authentication. *See generally* Declaration of Brendan Mulvey, dated June 6, 2025 ("Mulvey Decl."). Upon information and belief, Fiserv also failed to provide Cencap Federal with the same level of care and discretion that it uses to protect its own data. All along, a security control Cencap Federal specifically paid an additional fee to have implemented is absent.

Cencap Federal is entitled to emergency relief because Fiserv's lax security puts the credit union's sensitive information at immediate risk. Security lapses in the Virtual Branch and Client360 portal expose sensitive financial data that Cencap Federal is legally obligated to protect under applicable federal regulations. Fiserv's refusal to secure these portals using the contractually agreed multi-factor authentication security control exposes Cencap Federal and the 9,000 who

2

bank at Cencap Federal to unnecessary and unjustifiable risks.  As Fiserv has demonstrated a repeated inability to secure its systems despite prior security breaches and lawsuits, the Court should grant Cencap Federal emergency relief requiring Fiserv to forthwith implement multi-factor authentication, as already required by the parties' existing agreement.  Further, Cencap Federal is entitled to limited expedited discovery to assist the Court on resolving the factual issue presented by Fiserv's opposition.

This is not the first time Fiserv is facing injunction proceeding for mishandling the extraordinary sensitive information of its financial institution clients.  Previously, Fiserv falsely represented to another federal court that it had returned another credit union's sensitive data after a security problem with Virtual Branch surfaced—only to later admit the credit union's confidential data remained in its possession.  *See* Declaration of Charles J. Nerko, dated June 6, 2025 ("Nerko Decl."), Ex. A (Fiserv's Letter to Court in Another Litigation) & Ex. C (Fiserv's Answer and Counterclaims in Another Litigation).  Fiserv's history of deception underscores the urgent need for injunctive relief, as well as expedited discovery to verify the veracity of Fiserv's current claims.

Without immediate injunctive relief, Cencap Federal faces irreparable harm through data breaches, identity theft, and regulatory penalties.  Cencap Federal requests that the Court order Fiserv to promptly immediately secure its information with multi-factor authentication and provide audit records pertaining to the security issues.  Courts routinely award injunctive relief requiring that confidential information remain safeguarded, thus, this matter presents appropriate circumstances for the requested relief.

Given Fiserv's documented misconduct and its own acknowledgment of potential irreparable harm in its own form contract, Cencap Federal respectfully requests the Court grant the

3

temporary restraining order, preliminary injunction, and expedited discovery to protect the credit union and its members from imminent harm.

## BACKGROUND

A detailed statement of the facts relevant to Cencap Federal's motion is set forth in the accompanying declarations.[1]  For the Court's convenience, we summarize below the most salient facts.

Founded in 1950, Cencap Federal Credit Union began as the Hartford Municipal Employees Federal Credit Union and has a longstanding history of serving the Hartford, Connecticut community.  Festini Decl. ¶ 2.  As a credit union, Cencap Federal is structured as a not-for-profit cooperative owned by individual customers, who pool their resources to provide credit to one another.  *Id.*  For 66 years, it primarily served municipal employees.  *Id.* ¶ 3.  In January 2017, it rebranded as Cencap Federal to reflect its expanded membership eligibility, now including individuals who live, work, learn, or worship in underserved areas in and around Hartford.  *Id.*  Cencap operates two branches in Hartford, employs 18 staff members, and serves more than 9,000 members.  *Id.*  It offers a range of financial products and services, including savings and checking accounts, loans, and online banking tools.  *Id.*

Fiserv is a technology vendor that provides online banking and other services to Cencap Federal.  *Id.* ¶¶ 10-12.  Fiserv Solutions provided these services to Cencap Federal under a master agreement (the "Master Agreement").  *Id.* ¶ 13 & Ex. 1 (Master Agreement).

Fiserv has engaged in a series of highly problematic behavior, including several security lapses that have made Cencap Federal's members' private financial information accessible to unauthorized individuals.

---

[1] Cencap Federal does not have the burden of establishing all of these facts; some facts are included for background and context.

4

*First*, the "Virtual Branch" online banking system that Fiserv used to house Cencap Federal's data is insecure. *See* Mulvey Decl. at 1-2. The user login authentication process in place relies on easily guessable or researchable questions which allows hackers to readily take over consumers' online banking accounts. *See id.* at 3-4; *see also* Festini Decl. ¶ 22. Just a series of numbers are needed to take over a Cencap Federal account: an account number (which appears on the face of a check), the last 4 digits of a member's social security number (which Fiserv itself concedes is inadequate for authentication), the remaining digits of a social security number (which has the same problems as the last 4 digits), and the street address number (which is generally publicly available). Mulvey Decl. at 3-4; Festini Decl. ¶ 22. Under federal online banking guidelines, this single-factor authentication process is inadequate. Mulvey Decl. at 2-3; Festini Decl., ¶ 18 & Ex. 2 (FFEIC Online Banking Authentication Requirements). Rather, Fiserv was required to provide multi-factor authentication. Festini Decl. ¶¶ 16, 22 & Ex. 1 (Master Agreement), at 55 (Cencap Federal specifically paid additional fees for multi-factor authentication). Given the security risk, Cencap Federal has requested Fiserv to immediately remediate the security problems it identified and properly safeguard Cencap Federal's information as required under the parties' Master Agreement. *Id.* ¶ 29 & Ex. 3 (Notice of Breach).

Worse still, in another lawsuit Fiserv admitted that it never installed *basic* "rate limiting" security controls on Virtual Branch. Nerko Decl., Ex. C (Fiserv's Answer and Counterclaims in Another Litigation), ¶ 62. "Rate limiting" is the process by which a user account is locked after several failed login attempts. By allowing hackers unlimited attempts to take over accounts by guessing a user's last four social security numbers, Fiserv effectively has invited bad actors to hack Cencap Federal's user accounts using basic brute force attacks. The only security question was the last 4 of a consumer's social security number, allowing hackers to keep guessing the 4-digit

5

sequence *ad infinitum*—without locking out hackers after several incorrect guesses. Since all these "security" questions only ask for a numeric response, a hacker can easily automate cycling from 0000 to 9999 to bypass the last-four-digits security question. Fiserv's inadequate security measures allowed a hacker to perform this process and take over accounts with speed relative to a hacker's computing power. A similar approach could defeat the other security questions, like the street address number.

*Second*, the Client360 portal, where Cencap Federal's employees send administrative-level servicing requests to Fiserv—and which may include confidential, sensitive member information or account changes—is also secured by a simple username and password only, without the protection of two-factor authentication required by federal regulations and the parties' agreement. Mulvey Decl. at 2, 5; Festini Decl. ¶ 24-26. This portal—intended solely for Cencap Federal and Fiserv employees' administrative use—can grant the user elevated privileges over the credit union's core systems. Festini Decl. ¶ 24. If a hacker gains access, they could impersonate credit union employees, manipulate member accounts, modify system settings, alter transactional and fraud-prevention rules, or disable security controls entirely. A hacker can also see current and former support tickets, which contain sensitive consumer or security information. Festini Decl. ¶ 25. In the wrong hands, this administrative access is a weapon capable of compromising the entire credit union's operations. Fiserv's insecure practice of only requiring a simple username and password, without the other security controls (such as two-factor authentication) required by federal standards and the parties' agreement, exposes Cencap Federal's banking systems to significant and irreparable risks.

*Third*, Fiserv Solutions failed to participate in security audits required by federal regulation and the Master Agreement. Fiserv has previously declined to participate in these audits when it

6

will lead to security problems surfacing.  And, historically, if a Fiserv credit union commissions an audit on its own, Fiserv will sue its own customer.  *See*, *e.g.*, Nerko Decl., Ex. C (Fiserv's Answer and Counterclaims in Another Litigation); *see also Bessemer System Federal Credit Union v. Fiserv Solutions, LLC et al.*, No. 2:19-cv-00624-RJC (W.D. Pa. 2019), Dkt. 76.  Cencap Federal requires Fiserv to immediately provide its audit records so Cencap Federal can identify which of its members were impacted by the security lapses and ensure their accounts and personal information are safeguarded.  A data breach will not only have financial consequences, but also irreparably harm the credit union and its members.  For example, if a hacker takes over a Cencap Federal online banking account, the hacker could access highly confidential personal information, such as seeing a member's residence address, transactional history, and the dates and locations where a member uses a debit card.

*Fourth*, Fiserv's continued possession of Cencap Federal's member information without implementing the additional security controls sought by this motion prevents a serious risk of irreparable harm.  Fiserv admitted in its SEC filings that it "may not be able to prevent a material event in the future" with respect to unauthorized access to its clients' data—such as Cencap Federal's.  Festini Decl., Ex. 5 (Fiserv's February 20, 2025 Form 10-K).  An independent security research firm identified Fiserv as harboring security deficiencies that makes Fiserv 2.9 times more likely to suffer a consequential breach than companies having proper security practices.  *See* https://securityscorecard.com/security-rating/fiserv.com (Fiserv security rating is 81/100 or a B); https://securityscorecard.com/wp-content/uploads/2024/04/EBOOK-MachineLearning-3.0_v2.pdf at 9 (companies with only a "B" security rating like Fiserv are 2.9 times more likely to be breached).

Cencap Federal files this emergency motion to comply with federal law and protect itself and its 9,000 members from significant and irreparable harm caused by Fiserv's unsecured retention of highly sensitive data.

## ARGUMENT

Injunctive relief is warranted upon a party's showing (1) that it will suffer irreparable injury absent such relief; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in movant's favor.[2] *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002); *Local Moms Network, LLC v. Lamont*, No. 3:24-cv-192 (SRU), 2024 U.S. Dist. LEXIS 31134, at *6 (D. Conn. Feb. 23, 2024) (applying standard and granting TRO where former independent contractor violated non-compete and non-solicitation covenants by creating competing social

---

[2] The preliminary injunction Cencap Federal seeks is a prohibitory injunction that prohibits Fiserv, from maintaining Cencap Federal's Virtual Banking website and Client360 portal without the multi-factor authentication security control it had a preexisting duty to provide under the Master Agreement and federal regulations, to preserve status quo. The Second Circuit has repeatedly explained that, for purposes of granting a preliminary injunction, "the "status quo" is really the 'status quo ante'—that is, 'the last actual, peaceable[,] uncontested status which preceded the pending controversy.'" *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024). Further, under the status quo of the Master Agreement's audit provisions under § 4(a) and 12 C.F.R. Part 748, App'x A at III (D), the status quo requires Fiserv to provide audits of its system to Cencap Federal. "Preserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (TRO compelling the government to reinstate home health care benefits preserves the status quo rather than altering it); *Rodriguez v. Noem*, No. 3:25-cv-616 (SRU), 2025 U.S. Dist. LEXIS 83349, at *31 (D. Conn. May 1, 2025) (injunction restoring plaintiff's immigration records and status to preserve the status quo deemed prohibitory and subject to the lower standard); *Whipper v. Green*, No. 3:23-CV-27 (SVN), 2024 U.S. Dist. LEXIS 144066, at *36 (D. Conn. Aug. 13, 2024) (same for injunction requiring plaintiff's reinstatement in prison educational program and prohibiting retaliatory actions by DOC); *Entegee, Inc. v. Korwek*, No. 3:15-cv-1087 (VLB), 2015 U.S. Dist. LEXIS 118263, at *9 (D. Conn. Sep. 4, 2015) (same for preliminary injunction prohibiting former employee from working for a competitor and using confidential information in violation of non-compete and non-disclosure covenants). Further, the limited provisional relief does not provide Cencap Federal with substantially all the relief sought in the complaint, such as money damages and declaratory relief. In any event, Cencap Federal's showing satisfies any higher burden.

8

media accounts after termination). Cencap Federal readily meets this burden, and provisional injunctive relief is appropriate.

**I.      FISERV'S PRIOR FALSE STATEMENTS TO A FEDERAL COURT SHOW UNCLEAN HANDS AND WARRANT EQUITABLE RELIEF.**

This is not the first time Fiserv has stood before a federal judge in opposition to emergency injunctive relief. But the last time it did, it made a false misrepresentation to a federal judge.

In a prior proceeding involving a temporary restraining order seeking to have Fiserv dispossess itself of insecurely stored credit union data, Fiserv unequivocally represented to the Court it had fully returned the credit union's records. That representation was central to the court's denial of injunctive relief. But after the hearing, Fiserv was forced to concede that its factual representations to the Court were false. The credit union's records had *not* been fully returned. The supposed compliance was a fiction. The court had been misled. *See Bessemer System Federal Credit Union v. Fiserv Solutions, LLC et al.*, No. 2:19-cv-00624-RJC (W.D. Pa. 2019).

In that action, another credit union sued Fiserv for failing to safeguard the credit union's information on Virtual Branch, one of the two insecure systems at issue here. Given the security problems and apparent inability to then fix them, Fiserv agreed to return the credit union's records. After Fiserv failed to dispossess itself of the records, the credit union filed a motion for injunctive relief compelling Fiserv to return the records. *Id.* at Dkt. 16-18.

In response to credit union's motion for an injunction, Fiserv falsely represented to the Court that it had provided the credit union with "a complete set of" the requested records. *Id.* at Dkt. 24, p. 2; a copy of the same is annexed as Ex. A of Nerko Decl. Specifically, Fiserv's opposition to a preliminary injunction filed with the court claimed that "[d]efendants indisputably sent the records" and "[a]ny claim that [d]efendants are 'denying access' to this data is simply false." *Id.*

9

**2. eFichency Records**.  Here, too, a dispute arose about whether Bessemer would pay the fees and expenses that the parties' Master Agreement requires.  Again, in the interests of resolving any dispute and avoiding needless escalation, Defendants agreed to provide a complete set of these records to Bessemer.  A hard drive with the data was delivered to Bessemer on June 24, 2019 (this past Monday).  Bessemer admits that it received the hard drive but claims that the password Defendants provided does not work.  ***Bessemer never informed Defendants that it was having trouble with the password until the motion was filed.***  Not only did Bessemer not meet and confer on the issue, it didn't even pick up the phone and ask for help.  Defendants indisputably sent the records and obviously intended that Bessemer have access.  Defendants will work with Bessemer to resolve the password issue and, in an abundance of caution, are loading another copy of the data onto a separate drive that can be delivered by the end of the week.  If there is an issue here (and Fiserv Solutions' technical manager would testify that he checked the password and it was fully operable), it is a technical, not a legal, one.  ***More importantly, Bessemer has had continuous online access to all of these reports and data since its deconversion in early June.  Defendants' records reflect clearly that Bessemer personnel have been accessing the eFichency data in this way regularly.***  Any claim that Defendants are "denying access" to this data is simply false.

The court denied an injunction, based on Fiserv's assurances that the records at issue were returned.  *See Bessemer System Federal Credit Union v. Fiserv Solutions, LLC et al.*, No. 2:19-cv-00624-RJC (W.D. Pa. 2019), Dkt. 26.

Later, however, Fiserv provided the credit union with 900 records that Fiserv previously assured the court it had already returned—confirming that Fiserv misled the court, and that its prior representations that the credit union's records were returned were false.  *Id.* at Dkt 48, ¶¶ 192-199, a copy of which is annexed as Ex. C to Nerko Decl.; *see also* Nerko Decl., Ex. B (Second Amended Complaint in the Other Litigation), ¶¶ 192-199.

192.    Admit that, in a good faith effort at compromise, Fiserv Solutions sent the eFichency records to Bessemer on a hard drive and that Bessemer claimed to be unable to access the hard drive; except as so stated, deny the allegations of Paragraph 192.

193.    Admit the allegations of Paragraph 193, affirmatively alleging that the motion was summarily denied.

194.    Admit that Fiserv Solutions filed an opposition; state that the terms of that opposition speak for themselves; except as so stated, deny the allegations of Paragraph 194, specifically denying that any statement in the opposition was false.

195.    Admit the allegations of Paragraph 195.

196.    Admit that, during discussion between the parties respective personnel after the hearing on Bessemer's motion, the parties discovery that certain documents had inadvertently not been sent to Bessemer; except as so stated, deny the allegations of Paragraph

That episode is not ancient history.  It involved similar security problems, a similar motion, and nearly identical stakes.   It shows Fiserv is capable of misrepresenting—and will misrepresent—critical facts to a federal judge to gain a tactical advantage in exactly this context. This Court should take that history seriously.  "Because an injunction is a form of equitable relief, it is well-settled that principles of equity must be applied in any assessing the need for injunctive relief."  13 MOORE'S FEDERAL PRACTICE - CIVIL § 65.06[5][a].  Relevant principles of equity a Court considers on a preliminary injunction motion include a non-movant's "unclean hands," including "acts of bad faith [that] were directly related to the issue sought to be adjudicated in the underlying action."  *See id.*

Fiserv has acted with unclean hands in past injunction proceedings stemming from confidential credit union information that was inadequately safeguarded.  So Fiserv's factual

11

assertions here cannot be taken at face value.  The Court should scrutinize Fiserv's opposition with abundant skepticism, mindful that Fiserv willingly has deceived another federal judge in similar circumstances before.  And its willingness to mislead a judge in one courtroom should weigh heavily on how this Court proceeds here and guards the integrity of its own.  At a minimum, expedited discovery is warranted to evaluate Fiserv's factual claims (*see* Point VII, *infra*).  A party that has misled a court once should not be trusted to rest only on its say-so.  *See United States v. Cedeño*, 644 F.3d 79, 82 (2d Cir. 2011) (citing *United States v. Whitmore*, 359 F.3d 609, 619, 360 U.S. App. D.C. 257 (D.C. Cir. 2004) ("Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath.").

But more than discovery is at stake. Fiserv has used falsehoods to escape accountability before and defeat a motion such as this. That alone tilts the equitable balance in favor of granting the requested limited equitable relief to Cencap Federal and require that Fiserv secure the movant's data by promptly enabling multi-factor authentication.

This Court should not be the next to be misled. The Court should protect itself from deception by issuing a temporary restraining order to safeguard Cencap Federal's data and allowing expedited discovery to evaluate Fiserv's claims with appropriate rigor.  Anything less invites a repeat performance of Fiserv's sly tactics this Court should not tolerate.

## II.    CENCAP FEDERAL WILL BE IRREPARABLY HARMED WITHOUT INJUNCTIVE RELIEF

Without injunctive relief, Cencap Federal and its members will be profoundly and irreparably harmed.

12

### A. Fiserv admits irreparable harm.

Fiserv unequivocally acknowledges that a breach of its obligations under the Confidentiality and Ownership provision of the Master Agreement affecting Cencap Federal's information "may cause ***irreparable harm*** to [Cencap Federal] for which monetary damages alone may be insufficient, and ***[Fiserv] therefore acknowledges that [Cencap Federal] shall have the right to seek injunctive or other equitable relief*** against such breach or threatened breach . . ." Master Agreement § 3(b) (emphasis added)).

This important acknowledgment by Fiserv in the Master Agreement may "be viewed as an admission . . . that plaintiff will suffer irreparable harm." *See Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 46 (2d Cir. 2012). This provision is entitled to significant weight, and fully supports an award of injunctive relief. *See N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44-45 (2d Cir. 1999) (relying on similar clause to find irreparable injury).

### B. Cencap Federal's extraordinarily sensitive confidential information is being irreparably jeopardized.

The seriousness of the harm Fiserv is causing cannot be overstated. The information at issue here contains extraordinarily sensitive confidential information belonging to Cencap Federal that pertains to over 9,000 consumers. According to the National Credit Union Administration, the federal government agency that regulates Cencap Federal, "third-party vendors may pose a national security risk to the United States due to a lack of oversight . . . over their business operations—mainly with respect to cybersecurity given the amount and type of data they hold." *See* Nat'l Credit Union Administration, "Third-Party Vendor Authority" at 1, March 2022, https://www.ncua.gov/files/publications/regulation-supervision/third-party-vendor-authority.pdf. This is because both cybercriminals as well as "adversarial nation-states continue to focus their

efforts on exploiting vulnerabilities . . . including those of third-party service providers of information technology services." *Id.* at 5.

The information accessible through the vulnerable Virtual Banking website and Client360 portal includes home addresses, contact information, passwords, and debit card usage information for Cencap Federal's members. This information is highly prized by those seeking to blackmail, harass in person or online, or to commit other types of fraud, including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits.

***First,*** the harm to Cencap Federal is particularly acute because Fiserv has stored Cencap Federal's records on the internet with inadequate safeguards. These electronic records can easily be acquired by hackers and posted publicly on the internet, or sold to others intent on causing harm. And they can be concealed, transferred outside the jurisdiction of this Court, or deleted, altered, or destroyed (even by inadvertence). These harms cannot be fully remedied by money alone and threaten Cencap Federal and the thousands of consumers who entrust the credit union with their most sensitive financial information.

Stolen data is often sold on the dark web, a hidden part of the internet notorious for illicit transactions, where it can remain accessible for years. This enables cybercriminals to use the compromised information long after the initial breach, harvesting the members' other financial accounts and other sensitive data. This extended latency and criminality increases the risk of wide-ranging damage, making it difficult to fully redress a breach's impact with money damages alone. Given these realities, Cencap Federal faces substantial, ongoing threats to its confidential information.

14

**Second**, in Fiserv's own SEC filings, Fiserv concedes that it may be unable to prevent materially adverse cybersecurity incidents with respect to customers' data in its custody. Irreparable harm exists because in light of the security risks conceded by Fiserv, once Cencap Federal's member information is accessed by hackers, its confidentiality will be lost forever. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience…"); *see also Genworth Fin. Wealth Mgmt. v. McMullan*, 721 F. Supp. 2d 122, 131 (D. Conn. 2010) (granting preliminary injunction based on the defendants' dissemination of confidential client information to third parties, finding risk of continued dissemination, and ordering the retrieval and immediate return of improperly shared data to prevent further unauthorized use). An independent security research firm identified Fiserv as harboring security deficiencies that makes Fiserv 2.9 times more likely to suffer a consequential breach than companies having proper security practices. *See* https://securityscorecard.com/security-rating/fiserv.com (Fiserv security rating is 81/100 or a B); https://securityscorecard.com/wp-content/uploads/2024/04/EBOOK-MachineLearning-3.0_v2.pdf at 9 (companies with only a "B" security rating like Fiserv are 2.9 times more likely to be breached). There is no need to subject Cencap Federal's information to these profound risks.

**Third**, Fiserv's continued operation of vulnerable access points to Cencap Federal's systems poses an unacceptably grave and irreparable risk due to its history of failing to safeguard financial institution information. Given Fiserv's repeated security failures—even after multiple lawsuits—it cannot be trusted to protect Cencap Federal's data. Indeed, the very fact that Fiserv, is waging an expensive and protracted battle to not implement multi-factor authentication as

already required by the parties' Master Agreement and instead continue storing Cencap Federal's records on insecure websites demonstrates irreparable harm.

**Fourth**, Fiserv is irreparably harming Cencap Federal by causing it to violate federal regulations applicable to federal credit unions and exposing it to penalties for failing to comply with its regulatory obligations. The Federal Credit Union Act requires Cencap Federal to maintain a comprehensive information security program that includes, among other things, authentication protocols, access controls, and incident response procedures. These regulations obligate credit unions to implement measures designed to prevent, detect, and respond to unauthorized access to member information, and to notify regulators and affected members in the event of a suspected breach. Critically, these obligations require third-party service providers, such as Fiserv, to employ adequate safeguards to protect member data and cooperate in any investigation of a suspected incident.

Moreover, Fiserv has failed to provide required audit records regarding its information security. Pursuant to 12 C.F.R. Part 748, App'x A at III (D), credit unions are expressly required to monitor their service providers to confirm that they are implementing appropriate measures designed to safeguard member information, including protecting the security, confidentiality and integrity of credit union member information. *See* 12 C.F.R. Part 748, App'x A. As part of this monitoring, federal law requires credit unions to review "audits, summaries of test results, or other equivalent evaluations of its service providers." *Id.* at III D(3).

Similarly, The Federal Financial Institutions Examination Council's ("FFIEC") 2021 Guidance outlines key principles that financial institutions and their vendors are expected to follow. These include implementing layered security controls; monitoring and logging access attempts, including failed login attempts; restricting access to sensitive systems; and requiring

16

multi-factor authentication for public-facing and privileged access points. The Guidance further emphasizes that institutions must maintain the ability to assess and respond to threats in real time, and that these expectations apply equally to third-party service providers, such as Fiserv, who manage or host systems on the institution's behalf.

*Fifth*, Cencap Federal needs to know now which of its members Fiserv compromised so those consumers can be warned about impending criminal acts. Federal law and the parties' contract require Fiserv to provide audit records pertaining to information security. And Connecticut requires that data breach victims be notified. Conn. Gen. Stat. § 36a-701b. The members being targeted by hackers need to know that now. On the other hand, if Fiserv does not identify which Cencap Federal members' sensitive personal information are compromised, Cencap Federal may be placed in the position of unnecessarily notifying ***all*** its members of a potential data breach—which would irreparably harm Cencap Federal's goodwill, reputation, and customer relationships by unnecessarily alarming a subset of Cencap Federal members whose information was not compromised, as well as irreparably jeopardizing Cencap Federal's reputation, goodwill, and customer relationships. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (finding threatened loss of goodwill and customers, both present and potential, to be irreparable).

*Sixth*, a financial institution such as Cencap Federal typically bears the costs related to identity theft and fraud affecting its customers. These costs can be devastating—threatening the safety and soundness of the entire institution, particularly where, as here, Fiserv's misconduct endangers the credit union's full membership. The fallout from a data breach could impose overwhelming liability on Cencap Federal, pushing the credit union into insolvency, causing irreparable harm to both the institution and its members.

17

*In sum*, Fiserv's refusal to secure the Virtual Branch and Client360 portals, and its withholding of required security audit reports, continues to expose Cencap Federal and its members to serious and irreparable harm.

## III.    CENCAP FEDERAL IS LIKELY TO PREVAIL ON THE MERITS

Cencap Federal is also likely to prevail on its claims against Fiserv.[3] To make this showing, Cencap Federal "need not show that success is an absolute certainty." *Whipper,* 2024 U.S. Dist. LEXIS 144066, at *39. Rather, Cencap Federal "need only make a showing that the probability of [its] prevailing is better than fifty percent." *Id*; *see also Mohammed v. Reno*, 309 F.3d 95, 102 (2d Cir. 2002) (defining "less than a likelihood of success" to mean something less than 50 percent and "more likely than not" to mean a "likelihood . . . [of] more than 50 percent"). Cencap Federal's evidence readily satisfies this burden. The elements of Cencap Federal's claims are well known:

**Breach of Contract / Promissory Estoppel.** To succeed on its breach of contract claim, Cencap Federal must show: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *See Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 176 (S.D.N.Y. 2022). Each of these elements is readily met here.

The Master Agreement here expressly sets forth Fiserv Solutions' obligations, including requirements to implement and maintain an information security program that protects the security and confidentiality of Cencap Federal's member information as detailed in Section 4(a). Festini Decl., Ex. 1 (Master Agreement), at 3-4. The agreement further requires that Fiserv comply with "all laws and regulations directly and unambiguously applicable to Fiserv in the performance of

---

[3] Cencap Federal rests its requests for a preliminary injunction primarily on its claims for breach of contract / promissory estoppel, trade secret misappropriation, and negligence. Cencap Federal has also sued Fiserv for other claims and reserves the right at trial to seek damages and other relief based on all claims.

its obligations as a technology solutions provider under this Agreement," as set forth in Section 6(a). *Id.* at 5. Additionally, Section 3(e) of the ASP Services Exhibit obligates Fiserv to provide services that conform to specifications and meet standards of due care. *Id.* at 10. Critically, Fiserv expressly promised multi-factor authentication.

| Security Features | Activation Fee | Annual Fees |
|---|---|---|
| ☒ Multi-factor Authentication | Previously Paid | $0.32137 per user, per year |

*Id.* at 55.

Separately, Fiserv's Privacy Notice promises to protect client data "being accidentally lost, used or accessed in an unauthorized way, altered or disclosed," and represents that it complies with industry standards, including the Payment Card Industry Data Security Standard (PCI DSS). Fiserv's Privacy Notice, § 6, https://www.fiserv.com/en/about-fiserv/privacy-notice.html.

Cencap Federal has performed all of its required obligations under the Master Agreement, and Fiserv has not pointed to any deficiencies in Cencap Federal's performance. In contrast, Fiserv materially breached the Master Agreement and the Privacy Notice in multiple respects. First and foremost, Fiserv has not implemented the multi-factor authentication it expressly committed to provide. These include Fiserv's failure to maintain an adequate information security program, exposing Cencap Federal's member information on the Virtual Branch website Client360 portal without proper authentication or security controls as required under Section 4(a), failure to comply with laws and regulations governing data security, as required under Section 6(a), and failure to meet its service warranties by not providing services that conformed to specifications or met standards of due care as required under Section 3(e). Fiserv's conduct exposed Cencap Federal and its members to risks well beyond commercially reasonable norms. Finally, Fiserv breached its Privacy Notice by failing to safeguard Cencap Federal's member information as promised.

19

As a direct result of Fiserv's breaches, Cencap Federal and its members have suffered substantial damages, including but not limited to a heightened risk of identity theft and fraud. It is worth noting that Cencap Federal is not required to wait for its members' data to be stolen before stating a claim for breach of contract—Fiserv breached the contract by failing to implement the promised security measures. Their absence is irreparable harm

Alternatively, to the extent the Master Agreement or Privacy Notice are not enforceable contracts or subject to defenses, Cencap Federal may enforce the promises in them under promissory estoppel by showing: (1) Fiserv has failed to honor a clear and definite promise that (2) Fiserv reasonably should expect to induce detrimental action or forbearance on the part of Cencap Federal, and (3) the promise does, in fact, induce detrimental action or forbearance in reasonable reliance on the promise. *Kent Literary Club v. Wesleyan Univ.*, 338 Conn. 189, 209, 257 A.3d 874, 887 (2021).

Fiserv's representations in both the Master Agreement and its Privacy Notice constituted clear and definite promises to safeguard information, comply with applicable laws, and maintain industry-standard security measures. These representations were explicitly designed to assure Cencap Federal that its sensitive information would be protected. In reasonable reliance on these promises, Cencap Federal furnished sensitive member data and transacted business with Fiserv, expecting that proper security measures would be in place. Fiserv's failure to implement these measures expose Cencap Federal's member information to unauthorized access, causing substantial harm. Cencap Federal's reliance on Fiserv's promises was not only foreseeable but entirely reasonable, given the express language in the Master Agreement and Privacy Notice.

Thus, whether analyzed under breach of contract or promissory estoppel, Cencap Federal is likely to succeed on the merits of its claims.

20

**Trade Secret Misappropriation.** The Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. § 35-50 *et seq.*, defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Conn. Gen. Stat. § 35-51. The Defend Trade Secrets Act ("DTSA") uses different wording to define a trade secret but essentially protects the same types of information. 18 U.S.C. § 1839(3).

Here, Cencap Federal's member information, financial records, account details, and other confidential data held by Fiserv easily meet the definition under both statutes. This information is economically valuable because it relates to live consumer financial activity and is not publicly available. Disclosure of such information would allow competitors or malicious actors to exploit Cencap Federal's member data for their own benefit. It is subject to confidentiality protections under federal law, is not disclosed to the public, and is handled by Cencap Federal in a way designed to preserve its secrecy, including through the security procedures specified in the Master Agreement and Fiserv's Privacy Notice.

Fiserv acquired these trade secrets through improper means. The CUTSA provides that misappropriation can occur through: "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Conn. Gen. Stat. § 35-51. Likewise, the DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use" of a trade secret without the consent of the owner. 18

21

U.S.C. § 1839(5)(A)-(B).   Here, Fiserv misrepresented the security of Fiserv's online banking systems.   Without those misrepresentations, Cencap Federal would not have entered into the Master Agreement with Fiserv and given Fiserv access to Cencap Federal's trade secrets.   *See Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 175-176 (W.D. Penn. 2020) (holding that credit union stated trade secret misappropriation claim based on an unlawful acquisition theory based on Fiserv's misrepresenting the nature and existence of security controls over a credit union's online banking website notwithstanding absence of third-party unauthorized access).   Additionally, Fiserv misappropriated the trade secrets by unlawfully making sensitive financial information available to hackers through the security lapses on Fiserv's website.

**Negligence.**   To show negligence, Cencap Federal must show that (1) Fiserv owed the credit union a cognizable duty of care; (2) Fiserv breached that duty; and (3) Cencap Federal suffered damage as a proximate result. *Henry v. Oluwole*, 108 F.4th 45, 62 (2d Cir. 2024).   Under negligence principles, "[a] duty to use care may arise from a contract . . . ." *Emerick v. Kuhn*, 52 Conn. App. 724, 755, 737 A.2d 456, 475, *cert. denied*, 249 Conn. 929, 738 A.2d 653, *cert. denied sub nom. Emerick v. United Technologies Corp.*, 528 U.S. 1005, 145 L. Ed. 2d 386, 120 S. Ct. 500 (1999).

Fiserv owed Cencap Federal a cognizable duty of care arising from its contractual relationship with Cencap Federal.   Specifically, Section 3(b) of the Master Agreement requires Fiserv to "use the same care and discretion to prevent unauthorized disclosure of [Cencap Federal] Information as it uses with its own similar information that it does not with disclosed, but in no event less than a reasonable standard of care and no less than is required by law."   Festini Decl., Ex. 1 (Master Agreement), at 3.   Section 3(e) of the ASP Services Exhibit obligates Fiserv to provide services that conform to specifications and meet standards of due care.   *Id.* at 10.   Yet,

Fiserv breached its duty of care by failing to implement adequate security measures, including placing Cencap Federal's member information on the insecure Virtual Branch website and Client360 portal without proper authentication and security controls.

Beyond any contractual obligations, both Fiserv Inc. and Fiserv Solutions have assumed independent duties through Fiserv's Privacy Notice, which explicitly applies to "Fiserv, Inc., including its subsidiaries and affiliates." Fiserv's Privacy Notice, https://www.fiserv.com/en/about-fiserv/privacy-notice.html. The Privacy Notice creates specific commitments to protect client data from "being accidentally lost, used or accessed in an unauthorised way, altered or disclosed" and represents compliance with industry standards including the Payment Card Industry Data Security Standard (PCI DSS). *Id.* at § 6. These representations establish duties of care toward safeguarding Cencap Federal's financial data that exist independently from any contractual relationship.[4]

Moreover, Fiserv's failure to comply with applicable legal requirements as warranted under Section 6(a) of the Master Agreement further evidences its breach of the duty of care. Fiserv's deficient security measures and failure to meet its reasonable standard of care led to

---

[4] Connecticut's economic loss doctrine does not bar Cencap Federal's negligence claim because it arises not only from contractual obligations, but also from independent legal duties established by industry-standard duties, federal regulations applicable to financial institution vendors, as well as under the law of torts and statutory duties pertaining to the protection of trade secrets. *See Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 340 Conn. 200, 211, 263 A.3d 796, 804 (2021). In other words, "only if a court finds that a duty exists such that there is a negligence claim should that court go on to consider whether the economic loss doctrine bars that negligence claim." *Centerplan Constr. Co. LLC v. City of Hartford*, No. X07-HHD-CV-16-6069748-S, 2024 Conn. Super. LEXIS 2525, at *19 (Super. Ct. Nov. 26, 2024). The doctrine does not apply where, as here, Cencap Federal's negligence claim "traces back to the breach of a tort duty arising independently of the terms of the contract." *Raspberry Junction*, 340 Conn. at 212. The duties established through Fiserv's Privacy Notice and industry standard representations are precisely the type of "independent" tort duties that "can survive even if the contract claim fails." *Ulbrich v. Groth*, 310 Conn. 375, 404, 78 A.3d 76 (2013).

substantial vulnerabilities in Cencap Federal's data protection.  Given the nature and extent of these breaches, Cencap Federal has sufficiently established that Fiserv's misconduct proximately caused a substantial risk of harm to its members.  As such, Cencap Federal is likely to succeed on the merits of its negligence claim.

## IV.    ALTERNATIVELY, CENCAP FEDERAL HAS RAISED SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS, AND THE BALANCE OF THE HARDSHIPS DECIDEDLY TIPS IN CENCAP FEDERAL'S FAVOR

As set forth above, Cencap Federal has demonstrated that it is entitled to a preliminary injunction because Fiserv's actions will cause it irreparable harm and Cencap Federal is likely to prevail on the merits of its claims.  *See supra* Points II-III.

Even if the Court were not satisfied that Cencap Federal is likely to prevail on the merits, Cencap Federal has at a minimum raised sufficiently serious questions going to the merits of the dispute.  Additionally, the balance of hardships tips decidedly in Cencap Federal's favor.

While courts routinely find that the public interest supports that injunctions should be awarded to protect property rights, the public interest is more compelling here.  The confidential information Cencap Federal is seeking to protect involves the sensitive financial and personal information of 9,000 members of a not-for-profit credit union.  An injunction serves the public by protecting consumers' sensitive financial information from unnecessary harm and a heightened risk of identity theft and fraud while in Fiserv's possession.  Finally, an injunction serves important federal regulatory objectives in protecting the safety and soundness of a federally insured credit union.

What Fiserv cannot do—again—is leverage its superior access to information while shielding itself from judicial oversight through misrepresentation or delay.  As discussed previously, this is not the first time Fiserv has used that playbook.  It previously opposed a similar motion for injunctive relief by assuring a federal judge that it had returned a credit union's data

24

stored on a system allegedly to have been insecure—only to later admit that representation was false. The harm caused by that misrepresentation fell entirely on the credit union. The court was deprived an opportunity to rule on the actual facts, and the credit union lost an important opportunity for injunctive relief based on deceitful statements that Fiserv should never have made to a federal judge.

Fiserv may again ask the Court to deny emergency relief while relying on similarly untested factual assertions. Equity does not reward deception. That history makes clear where the true risk of harm lies. It is the Cencap Federal—not Fiserv—who risks suffering disastrous consequences if injunctive relief is withheld based on another round of duplicitous assurances and vacuous promises.

In these circumstances, the equitable scales decidedly tip in favor of preserving the status quo, ordering limited discovery, and protecting Cencap Federal from irreparable harm while the facts are properly evaluated.

## V.      THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER

It is well established that, "[i]n the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction." *See McKinney v. Dougherty*, No. 3:24-cv-1024 (VAB), 2025 U.S. Dist. LEXIS 36190, at *19 (D. Conn. Feb. 28, 2025). As set forth above, Fiserv's failure to implement multi-factor authentication presents immediate and irreparable harm to Cencap Federal and the over 9,000 members it serves. A temporary restraining order is warranted on the facts here and serves the interests of justice.

## VI.     CENCAP FEDERAL SHOULD NOT BE REQUIRED TO POST A BOND

Cencap Federal should not be required to post a bond. The language of Rule 65(c) confers broad discretion on the trial judge to frame orders granting injunctions. *Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011). "Where there is no proof of likelihood of harm, the district

25

court has broad discretion to dispense with the bond requirement." *See Colgan Fin. Grp., Inc. v. First 100, LLC*, No. 3:14-CV-01254 (VLB), 2014 U.S. Dist. LEXIS 200197, at *2 (D. Conn. Dec. 22, 2014) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir.1997) (affirming the district court's decision not to require a bond because it found that the defendants would not suffer damage or loss from being forced to arbitrate rather than prosecute their claims in court)).

Fiserv lacks a legitimate economic interest in continuing to insecurely store Cencap Federal's records. Nor can Fiserv seriously show harm from an injunction: Fiserv would be required in the ordinary course of its business to secure Cencap Federal's records with multi-factor authentication and provide audit records. Indeed, Cencap Federal already paid extra fees to Fiserv to implement multi-factor authentication. Thus, there is no economic burden to Fiserv. Finally, imposing a bond would unfairly burden a not-for-profit, consumer-owned credit union. Accordingly, the Court should use its discretion to issue an injunction without a bond to protect Cencap Federal.

## VII.    THE COURT SHOULD AUTHORIZE LIMITED, EXPEDITED DISCOVERY

Fiserv previously has hoodwinked a federal court to deny injunctive relief. This Court should not allow Fiserv to attempt to do so again here. Without expedited discovery, the Court is left to confide in Fiserv's unsupported word—a proven mistake. Fiserv should therefore be consigned to back its opposition with appropriate discovery and evidentiary support.

Given Fiserv's demonstrated dishonesty in prior federal court proceedings, Cencap Federal seeks authorization to conduct limited, expedited discovery on a reasonable schedule to obtain and consolidate evidence that will aid the Court in determining whether to grant a preliminary injunction and to evaluate the factual assertions Fiserv will make here. Courts in this District follow the "ordinary practice" of "permit[ting] limited and reciprocal expedited discovery regarding the issues that will arise at the preliminary injunction hearing." *Teachers Ins. & Annuity*

26

*Ass'n of Am. v. Wheatley*, Civil Action No. 3:21 - CV - 1380 (CSH), 2021 U.S. Dist. LEXIS 211296, at *5 (D. Conn. Nov. 2, 2021).

Expedited discovery is appropriate to develop the record for a preliminary injunction. *See e.g.*, Ashfield *Health LLC v. Jacobson*, No. 21-cv-004170-VAB, 2021 U.S. Dist. LEXIS 67668, at *6 (D. Conn. Apr. 1, 2021) (permitting expedited document requests and Rule 30(b)(6) deposition); *Sica v. Connecticut*, 331 F. Supp. 2d 82, 88 (D. Conn. 2004) (holding that plaintiff is entitled to limited expedited discovery on issues relevant to the preliminary injunction hearing); *Teachers Ins. & Annuity Ass'n of Am.*, 2021 U.S. Dist. LEXIS 211296, at *10 (granting expedited document discovery, including depositions, in aid of preliminary injunction hearing).

Cencap Federal requests expedited discovery narrowly tailored to address critical issues in this injunction proceeding:

1. An interrogatory response identifying the security controls in place over Cencap Federal's online banking website and Client360 portal, how they changed over time, and which Cencap Federal members had their information compromised.

2. Access logs and audit reports of the systems used to store Cencap Federal's information.

3. An interrogatory response explaining (a) the care and discretion Fiserv uses to prevent unauthorized disclosure of information with its own information that it does not wish disclosed and (b) the categories of Fiserv's own information it protects with multi-factor authentication.

4. A 30(b)(6) deposition of a Fiserv corporate representative on the subjects raised by this motion.

27

> 5. To the extent Fiserv's opposition raises disputed issues of fact, any other discovery reasonably necessary to resolve those issues.

This evidence is crucial. It is within Fiserv's control, and these requests are narrowly tailored to what is essential to assist the Court in determining the pending motion and to avoid irreparable harm to Cencap Federal and its members. Without such evidence, Cencap Federal— and scores of its members who entrust Cencap Federal to safeguard their most sensitive financial information—will be prejudiced. This evidence will equip Cencap Federal to identify which of its members were hacked and help them take protective measures to prevent irreparable harm to them. Moreover, Fiserv agreed to "use the same care and discretion to prevent unauthorized disclosure of [Cencap Federal's] Information as it uses with its own similar information that it does not wish disclosed," in addition to using an objective, reasonable standard of care. Festini Decl., Ex. 1 (Master Agreement), at 3. Therefore, information regarding how Fiserv understood this subjective standard of care and what security controls Fiserv implements to protects its own data is necessary for the Court to determine whether Fiserv met the subjective standard of care under Section 3(b) of the Master Agreement. Further, this evidence will assist the Court resole the preliminary injunction application on the actual facts given Fiserv's past deception in preliminary injunction proceedings.

On the other hand, Fiserv cannot establish any appreciable prejudice because Fiserv will have to produce this evidence anyway in the ordinary course of discovery. And Fiserv Solutions' Master Agreement contemplated that Fiserv provide disclosures pertaining to its security in the ordinary course of business. As a result, any incremental effort needed to produce this evidence prior to the preliminary injunction determination is nonexistent, and trivial at most. Accordingly,

the Court should order limited, expedited discovery to assist the Court in determining this motion for a preliminary injunction.

<u>**CONCLUSION**</u>

Cencap Federal entrusted its most sensitive information to Fiserv's care, only to be betrayed. Fiserv has repeatedly ignored its obligations to implement multi-factor authentication to safeguard the extraordinarily sensitive information entrusted to it—and has even proven itself willing to mislead a federal court in past injunction proceedings.

Without immediate relief requiring Fiserv to implement multi-factor authentication to safeguard the confidentiality of this sensitive information, Cencap Federal and the 9,000 consumers who bank there will be exposed to profound, irreparable harm. Therefore, Cencap Federal respectfully requests that this Court grant its motion for a temporary restraining order, expedited discovery, and a preliminary injunction.

Dated: June 6, 2025

Respectfully submitted,

BARCLAY DAMON LLP

By:    *Brian D. Rich*
    Charles J. Nerko*
    Brian D. Rich (Bar No. ct24458)
    Matthew J. Smith*
    Xun Chen*
1270 Avenue of the Americas, Suite 501
New York, NY 10020
212.784.5800
cnerko@barclaydamon.com
brich@barclaydamon.com
msmith@barclaydamon.com
xchen@barclaydamon.com

*Attorneys for Plaintiff*
*Cencap Federal Credit Union,*
*on behalf of itself and its members*

* Not admitted in D. Conn; *pro hac vice* application to be filed

29

31354402