UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENCAP FEDERAL CREDIT UNION, on behalf of itself and its members,<br><br>         *Plaintiff,*<br><br>   -against-<br><br>FISERV SOLUTIONS, LLC f/k/a FISERV SOLUTIONS, INC. and FISERV, INC.<br><br>         *Defendants.* | Case No.: 3:25-cv-00913-VOD |

**DECLARATION OF AL FESTINI**

I, Al Festini, declare as follows:

1. I serve as the Chief Executive Officer of plaintiff Cencap Federal Credit Union ("Cencap Federal") and have been at this position since November 2024. I have personal knowledge of the matters set forth below based on my extensive involvement in Cencap Federal's business activities.

**Introduction to Cencap Federal and
Federal Credit Unions' Vendor Oversight Requirements**

2. Founded in 1950, Cencap Federal Credit Union began as the Hartford Municipal Employees Federal Credit Union and has a longstanding history of serving the Hartford, Connecticut community. As a credit union, Cencap Federal is structured as a not-for-profit cooperative owned by individual customers (our "members"), who pool their resources to provide credit to one another.

3. For 66 years, Cencap Federal primarily served municipal employees. In January 2017, it rebranded as Cencap Federal to reflect its expanded membership eligibility, now including individuals who live, work, learn, or worship in certain underserved areas in and around Hartford.

As of March 2025, Cencap operates two branches in Hartford, employing 18 staff members and serving more than 9,000 members. It offers a range of financial products and services, including savings and checking accounts, loans, and online banking tools.

4. There are several key differences between banks and federal credit unions. One difference is that federal credit unions are consumer-owned, not-for-profit cooperatives. Another key difference is that federal credit unions are insured and regulated by the National Credit Union Administration (the "NCUA"), a federal government agency, rather than by bank regulatory agencies.

5. Unlike bank regulatory agencies, the NCUA lacks regulatory authority over a credit union's third-party vendor relationships. Thus, while a bank regulator has authority to address vendors mishandling bank customer information, the NCUA lacks authority over a credit union's vendor who mishandles a credit union's member information. As a result, federal law (12 C.F.R. Part 748, Appendix A) requires credit unions to perform due diligence and to oversee their third-party vendor relationships to ensure member information is being safeguarded appropriately.

6. While credit union vendors are not subject to direct federal regulatory oversight, a credit union's oversight of a vendor is subject to the NCUA's supervision. Thus, the responsibility of policing vendors entrusted with a credit union's member information falls on the credit union itself, rather than on the NCUA.

7. This action stems from Cencap Federal's duties under federal law to protect its member information and to oversee one of its service providers, Fiserv Solutions, LLC ("Fiserv Solutions") and its related entity, Fiserv, Inc. (collectively, "Fiserv") that has custody of Cencap Federal's information.[1]

---

[1] The source of my belief is that I recall seeing Fiserv, Inc. listed as the author or copyright holder

8. After Fiserv was notified by Cencap Federal of security problems, Fiserv has refused to fix them and continues to store Cencap Federal's highly sensitive records on insecure websites that threaten the confidentiality of our credit union's information. Despite demands, Fiserv has refused to cease this misconduct. Cencap Federal has been forced to seek emergency relief to protect itself and the thousands of consumers who bank at Cencap Federal.

## Introduction to Fiserv

9. Fiserv is one of the world's largest providers of technology solutions to financial institutions. According to Fiserv's website, it has nearly 10,000 clients in more than 100 countries.[2] Fiserv administers 1.6 billion accounts.[3] It processes more than 25,000 transactions per second at peak.[4]

10. Fiserv provides account processing services for Cencap Federal. An account processing system is the "brains" behind a financial institution, processing and recording all transactions for the financial institution. For example, Fiserv processed transactions initiated through our tellers' computers, maintained our members' account records, and issued account statements to our members.

11. Fiserv also hosted Cencap Federal's online banking website, which is called "Virtual Branch." Fiserv processes members' transactions originating from that website. Once a

---

of our online banking website that was to be hosted by Fiserv Solutions, and I also recall seeing the name Fiserv, Inc. listed as the author or copyright holder of the software used by credit union employees. Although Cencap Federal is not in privity with Fiserv, Inc., I believe that Fiserv, Inc. has custody of our account records and information, and therefore it is a proper codefendant in this action and a party to be enjoined. Furthermore, Fiserv, Inc.'s Privacy Notice applies to Fiserv, Inc. and all of its subsidiaries and affiliates, including Fiserv Solutions.

[2] *See* https://www.fiserv.com/en/about-fiserv.html; https://www.fiserv.com/en/country-selector.html
[3] *See* https://www.fiserv.com/en/about-fiserv.html.
[4] *See id.*

person accesses Virtual Branch, they can engage in transactions affecting their Cencap Federal account, including transferring funds in and out of the account.

12. In addition to Virtual Branch, Fiserv also furnished the Client360 portal, a platform where Cencap Federal employees can submit service requests and change orders related to its services, including online banking products. Through Client360, Cencap Federal employees can communicate with Fiserv to modify account settings, update services, change security settings, and address technical issues. These requests often contain confidential information necessary to provide context for processing the tickets.

### Fiserv Deceives Cencap Federal by Misrepresenting Fiserv's Security Practices

13. To obtain the benefits promised by Fiserv, in 2016, Cencap Federal and Fiserv Solutions entered into a master agreement, as amended (the "Master Agreement"). **Exhibit 1** hereto is a true and correct copy of the Master Agreement.

14. In order for Fiserv to perform the service, Cencap Federal provided highly sensitive and confidential banking information to Fiserv.

15. Among the misrepresentations made by Fiserv to induce Cencap Federal to execute the Master Agreement was that Fiserv's services would "use the same care and discretion to prevent unauthorized disclosure of Information as it uses with its own similar information that it does not wish disclosed, but in no event less than a reasonable standard of care and no less than is required by law" and that Fiserv would not "disclose any 'non-public personal information' about [Cencap Federal]'s customer information in any manner prohibited by Title V of the Gramm-Leach-Bliley Act or the regulations issued thereunder, as applicable to Fiserv." *See* Exhibit 1 (Master Agreement), at 3.

16. This would encompass providing adequate security for information stored in "Virtual Branch," hosted by Fiserv Solutions, which was to become Cencap Federal's online

4

banking website. This would also encompass providing adequate security for the Client360 portal, where Cencap Federal sends its servicing requests to Fiserv, and which may include confidential, sensitive member information. This would also include implementing multi-factor authentication for the Virtual Branch, a security feature that Cencap Federal specifically paid for under the Virtual Branch Services Schedule to the ASP Services Exhibit of the Master Agreement.

| Security Features | Activation Fee | Annual Fees |
|---|---|---|
| ☒ Multi-factor Authentication | Previously Paid | $0.32137 per user, per year |

*Id.* at 55.

17. As set forth in greater detail below, Fiserv's representations concerning the adequacy of its authentication process for its Virtual Branch online banking website and the Client360 portal were false. In reality, Fiserv employed a deficient authentication process that was not compliant with agreed requirements. Fiserv's lax security controls permit unauthorized individuals to take over online banking accounts, view member information, and engage in unauthorized transactions.

18. **Exhibit 2** hereto is a true and correct copy of FFIEC online banking authentication requirements. The FFIEC is an interagency body composed of federal financial regulators, which includes the NCUA, and thus its regulatory guidance is applicable to federal credit unions. The FFIEC requires, among other things, the following authentication safeguards for online banking websites:

   a. Online banking websites should "effectively authenticate users and customers to protect information systems, accounts, and data" (*Id.* at 1.)

   b. Online banking websites should implement "multi-factor authentication (MFA) or controls of equivalent strength, combined with other layered security controls" when "single-factor authentication is inadequate." (*Id.* at 1.)

5

    c. Financial institutions are subject to "the standard to have internal controls and information systems that are appropriate to the institution's size and complexity and the nature, scope, and risk of its activities" (*Id.* at 1.)

    d. "[E]ffective risk assessment practices consider whether any residual risk associated with the authentication solution is consistent with the financial institution's risk appetite and security policies" (*Id.* at 7.)

    e. "[S]ingle-factor authentication, either alone or in combination with layered security, is inadequate in many situations" (*Id.* at 3.)

19. As set forth in greater detail below, Fiserv's Virtual Branch system and the Client360 portal did not comply with FFIEC authentication requirements, and Fiserv has failed to protect Cencap Federal's information as required by Section 3(b) and the Virtual Branch Services Schedule to the ASP Services Exhibit of the Master Agreement. Exhibit 1 (Master Agreement), at 3, 55.

## Cencap Federal's Security Review Uncovers Security Problems with Its Fiserv-Hosted Online Banking Website

20. Our security review of Fiserv uncovered critical security flaws with the online banking system Fiserv was providing Cencap Federal, including with the authentication controls Fiserv used to verify that online banking accounts were being created by authorized users.

21. Creating an online banking account through Fiserv's Virtual Branch requires only basic, easily obtainable personal information. All that Fiserv requires to register for an online banking account with Cencap Federal is an account number, the member's Social Security number, and street address number. Given the weak security controls Fiserv had implemented on Cencap Federal's online banking enrollment workflow, an unauthorized individual can create and take over a member's online banking account and gain control over it by obtaining the member's street address, account number (such as from the face of a check or guessing an account number based upon the sequence used to assign account numbers), and then either knowing or guessing the member's Social Security number. Once an online banking account is created, hackers can freely

6

access all account information and conduct unauthorized transactions without any additional security barriers.

22. Astoundingly, Cencap Federal specifically paid additional fees to implement two-factor authentication for the Virtual Branch platform. *Id.* at 55 (Virtual Branch Services Schedule to the ASP Services Exhibit). Yet, despite collecting additional fees for this security feature, Fiserv left the Virtual Branch completely unprotected by two-factor authentication, leaving sensitive member information protected by nothing more than single-factor authentication for new account creation.

23. The results of the security review revealed that Cencap Federal's online banking website was not safeguarded as required by Section 3(b) and the Virtual Branch Services Schedule to the ASP Services Exhibit of the Master Agreement, as falsely represented by Fiserv. Fiserv failed to implement multi-factor authentication, as expressly promised. Fiserv also failed to comply with FFIEC requirements for authenticating online banking transactions by using ineffective methods to authenticate the identity of customers creating online banking accounts, failing to implement multifactor authentication, layered security, or other controls, and failing to implement appropriate risk mitigation strategies and authentication requirements appropriate to the risk of allowing a hacker to access a consumer's online banking account.

24. Beyond the vulnerabilities in Fiserv's Virtual Branch, Cencap Federal's sensitive information is further exposed through the Client360 portal, a publicly-accessible website used by credit union employees for managing service tickets, support requests, and other communications with Fiserv. Through this portal, Cencap Federal employees communicate with Fiserv requesting changes to the core banking products and services that Fiserv provides, often including sensitive information to provide necessary context for these service requests. Support tickets on Client360

can also pertain to changes to security controls, making the ticketing system very sensitive. Despite handling confidential information and handling requests that would affect system security, the Client360 portal is only secured by a simple username and password, without additional security protection such as two-factor authentication.

25.     If a hacker gains access to the Client360 portal, they could impersonate credit union employees, manipulate member accounts, modify system settings, alter transactional and fraud-prevention rules, or disable security controls entirely.  A hacker can also see current and former support tickets, which contain sensitive consumer or security information.

26.     Like the Virtual Branch, the lack of multi-factor authentication or other proper security protections on the Client360 portal makes it highly susceptible to unauthorized access. Anyone with login credentials can enter the Client360 platform without any secondary verification step, making it far easier for unauthorized parties to intercept or manipulate service requests by impersonating credit union employees.

27.     Ironically, Fiserv's own Client360 User Guide and Admin Guide both recognize that multifactor authentication is a necessary security protection considering the highly sensitive information accessible through the portal. *See* "Cient360 User Guide", https://virtualtrainer.fiservapps.com/TrainGuides/Client360/Client360_UserGuide.pdf ("Users must authenticate upon every sign-in to confirm their identity, since all users have access to information specific to their financial institution such as contacts, inquiries, and sensitive notes/attachments") "Client360 Admin Guide", https://virtualtrainer.fiservapps.com/TrainGuides/Client360/Client360_AdminGuide.pdf ("To ensure the security of a user's financial institution information, authentication is required for every sign-in. This confirms the user's identity and allows access to personal information, including contacts, inquiries, and sensitive notes/attachments.")

28. It would be expected that a company as sophisticated as Fiserv would implement appropriate controls to safeguard Cencap Federal's online banking accounts and Client360 portal against unauthorized access through trial-and-error, "guessing" or other reasonably foreseeable attacks. With respect to Cencap Federal's online banking website and Client360 portal, Fiserv failed to implement reasonable security controls such as those that:

    a. require multi-factor authentication;

    b. require the use of an authentication procedure with sufficient complexity and secrecy;

    c. implement a rate-limiting mechanism to effectively limit the number of failed authentication attempts that can be made on an online banking account;

    d. require an individual to complete a "captcha" (a simple puzzle used to thwart automated access attempts);

    e. impose an adequate waiting or lockout period following a failed login attempt; and

    f. leverage other risk-based or adaptive authentication techniques to identify user behavior that falls outside typical norms, including repetitive, highly anomalous behavior consistent with a "guessing" or trial-and-error method to gain access to Cencap Federal's online banking website and Client360 portal.

**Cencap Federal Issues a Notice of Breach and Audit Demand to Fiserv Solutions**

29. As a result of the insecurity noted above that jeopardizes the confidentiality of our member information, on or about May 28, 2025, we issued a notice of breach and intent to seek temporary restraining order to Fiserv, (1) advising that Fiserv was in breach of the Master Agreement by, among other things, failing to use the same care and discretion to prevent unauthorized disclosure of information, and (2) requesting security audit records. **Exhibit 3** hereto is a true and correct copy of our notice of breach.

30. Counsel for Fiserv responded by letter dated May 30, 2025 disputing Fiserv's breach, refusing to provide the requested records, and instead demanding that Cencap Federal pay

31465261

unreasonable and unwarranted termination fees.  **Exhibit 4** hereto is a true and correct copy of Fiserv's letter response.

31.     Under Section 4(a) of the Master Agreement, Fiserv Solutions was required to provide Cencap Federal with copies of "audit reports, summaries of test results or other equivalent measures taken by Fiserv to assess whether its information security program meets the [Master Agreement's] objectives." Exhibit 1 (Master Agreement), at 3-4.

32.     Under Section 4(b) of the Master Agreement, Fiserv Solutions was required to provide Cencap Federal with "a summary of Fiserv's written Information security plan for the applicable Services received by" Cencap Federal. *Id.* at 4.

33.     Under Section 3(d) of the ASP Services Exhibit to the Master Agreement, Fiserv Solutions was obligated to provide Cencap Federal with "a copy of [Fiserv Solutions'] most recent security certification, if any, for the applicable Fiserv service center providing such Services." *Id.* at 10.

34.     Under Section 3(f) of the ASP Services Exhibit to the Master Agreement, Fiserv Solutions was obligated to provide Cencap Federal with "a copy of [an] independent audit report of the Fiserv service center providing Services . . ." *Id.* at 10.

35.     Under Section 5(c) of the ASP Services Exhibit to the Master Agreement, Fiserv Solutions was obligated to "test the Disaster Recovery Plan periodically," and upon Cencap Federal's request, "test results will be made available to [Cencap Federal]'s management, regulators, auditors, and insurance underwriters." *Id.* at 12.

### Fiserv Solutions Refuses to Provide Required Audit Documents Regarding Its Security Practices and Fails to Cure Its Material Breaches

36.     Following the notice of breach, Fiserv Solutions continued to remain in material breach of the Master Agreement.  It did not secure the gaping security holes Cencap Federal

identified. As discussed above, on May 30, 2025, counsel for Fiserv responded to our notice of breach, disputing Fiserv's breach, refusing to implement multi-factor authentication as previously agreed, and instead demanding that Cencap Federal pay unreasonable and unwarranted termination fees. *See* Exhibit 4.

37. Moreover, Fiserv Solutions refused to provide a single document required by the foregoing audit provisions in response to Cencap Federal's audit of Fiserv Solutions' security practices—despite multiple contractual provisions imposing audit requirements on Fiserv.

38. The audit provisions in the Master Agreement were a material obligation of Fiserv Solutions. This is because federal regulations state that a credit union "should review audits, summaries of test results, or other equivalent evaluations of its service providers." *See* 12 C.F.R. Part 748, Appendix A, at D(3).

## **Irreparable Harm**

39. Fiserv is irreparably harming Cencap Federal by exposing extraordinarily sensitive confidential information belonging to Cencap Federal that pertains to our over 9,000 members. Indeed, Fiserv has conceded that a breach of its obligations under the Confidentiality and Ownership provision of the Master Agreement affecting Cencap Federal's information "may cause ***irreparable harm*** to [Cencap Federal] for which monetary damages alone may be insufficient, and ***[Fiserv] therefore acknowledges that [Cencap Federal] shall have the right to seek injunctive or other equitable relief*** against such breach or threatened breach . . ." Exhibit 1 (Master Agreement), at 3 (emphasis added)).

40. The information accessible through the insecure Virtual Banking website and Client360 portal includes home addresses, contact information, passwords, and debit card usage information for Cencap Federal's members. This information is highly prized by those seeking to blackmail, harass in person or online, or to commit other types of fraud, including obtaining ID

11

cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits.

41.     Adding to this vulnerability, Fiserv itself acknowledges its inability to protect client data. Fiserv concedes that it may not be able to protect its clients' records from future data breaches. Indeed, in its SEC filing, Fiserv admits Fiserv admits that it may not be able to protect its customers' records from future data breaches in its most recent SEC Form 10-K dated February 20, 2025:

> ***We expect that unauthorized parties will continue to attempt to gain access to our systems*** …. Although we believe that we maintain a robust program of information security and controls and that none of the events that we have encountered to date have materially impacted us, ***we cannot be certain that the security measures and procedures we have in place*** to detect security incidents and protect sensitive data, including protection against unauthorized access and use by our employees, ***will be successful or sufficient*** to counter all current and emerging technological risks and threats.

(emphasis added). **Exhibit 5** hereto is a true and correct copy of Fiserv's Form 10-K dated February 20, 2025.

42.     The consequences of this admitted vulnerability are permanent and far-reaching. Once Cencap Federal's sensitive member information is accessed by hackers, its confidentiality will be lost forever. These electronic records can easily be acquired by hackers and posted publicly on the internet. And they can be concealed, transferred outside the jurisdiction of this Court, or deleted, altered, or destroyed (even by inadvertence). These harms cannot be fully remedied by money alone and threaten Cencap Federal and the thousands of consumers who entrust the credit union with their most sensitive financial information.

43.     Most urgently, Cencap Federal needs to know now which of its members Fiserv compromised so those consumers can be warned about impending criminal acts. Connecticut law

requires that data breach victims be notified.  *See* Conn. Gen. Stat. § 36a-701b.  If members are being targeted by hackers, they need to know that now.

      44.    Accordingly, Cencap Federal respectfully requests that the Court grant Cencap Federal a temporary restraining order, expedited discovery, and a preliminary injunction.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2025

Al Festini
Chief Executive Officer
Cencap Federal Credit Union